[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION CT Page 1435
McNeiece Construction Co. has moved to confirm and Tandem Foods Corporation ("Tandem") and California Smoothie of Connecticut, Inc. ("Connecticut Smoothie") have moved to vacate an arbitration award arising from a dispute concerning the construction of a restaurant at the Stamford Town Center.
The application to vacate invokes two grounds pursuant to52-418(a) C.G.S.: 1) that there was evident partiality or corruption on the part of the arbitrator, prohibited by52-418(a)(2) C.G.S., and that 2) the arbitrator exceeded his powers in violation of 52-418(a)(4) C.G.S. by awarding damages against an entity that was not a party to the contract at issue.
The court finds McNeiece Construction, Inc. and California Smoothie of Connecticut, Inc., entered into a construction contract on August 12, 1991. The contract provides that the Contractor and the Owner would submit to arbitration of any dispute that arose relating to contract documents or the breach thereof. McNeiece filed the initial demand for arbitration. A demand was then filed by Tandem Foods Corporation, Inc., which is identified in the contract as "the architect," alleging a counterclaim for 101 unfinished items. After several arbitration sessions, counsel for Tandem Foods, Inc. indicated to the arbitrator that the wrong corporation had been identified as demanding arbitration as to the counterclaim, and Richard Pineles, who is president both of Tandem Foods, Inc. and of California Smoothie of Connecticut, Inc., testified that the corporations are separate entities. The arbitrator, Charles A. Ahlstrom, issued an award in which he ordered "the respondent" to pay to McNeiece $85,583.50. The arbitration award identifies "the respondent" as "Tandem Foods Corporation/California Smoothie of Connecticut, Inc."
During a break in the testimony on the fifth day of the arbitration hearing, the arbitrator was chatting with counsel and the principals of the parties. During the discussion, it was mentioned that respondent's president, Mr. Pineles, and CT Page 1436 respondent's counsel, Alexander Schwartz of Cohen and Wolf, P.C., would be attending Passover seders that evening. Both men are Jewish. Counsel or McNeiece, Robert L. Peat, who is not Jewish, commented that he, too, would be attending a seder. The arbitrator then made a comment in which he referred to "Jewish lawyers" and observed that he was aware from his practice of what he called "Jewish tactics." He gave as an example the filing of a mechanics lien against public property. Attorney Schwartz asked whether the arbitrator would use the same term if a lawyer were Protestant, and the arbitrator said that he would. Messrs. Schwartz and Pineles considered this exchange anti-Semitic. They were disturbed and left the room immediately. Subsequent sessions of the arbitration ensued, and the proceeding was completed uneventfully after several weeks.
The arbitrator denied the respondent's counterclaim for all 101 items claimed to be unfinished.
An allegation that an arbitrator was biased, if supported by sufficient evidence, may warrant the vacating of the arbitration award. Schwarzschild v. Martin, 191 Conn. 316, 327 (1983); Local 520, AFSCME, Council 15 v. New Haven, 9 Conn. App. 260, 267
(1986). The burden of proving bias or evident partiality pursuant to 52-418(a)(2) rests on the party making the claim, and requires more than a showing of an "appearance" of bias. Vincent Builders, Inc. v. American Application Systems, Inc.16 Conn. App. 486, 495 (1988), citing Local 530, AFSCME, Council 15 v. New Haven, supra, at 265, 274. In construing 552-41a(a)(2) the Appellate Court has concluded that evident partiality "will be found where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration. To put it in the vernacular, `evident partiality' exists where it reasonably looks as though a given arbitrator would tend to favor one of the parties." id.
The arbitrator in this case made remarks that can reasonably be taken to indicate his view that lawyers of a particular ethnicity were likely to make specious, unreliable or unduly aggressive claims. His comments indicated that he held a stereotype developed from his own experiences, and that he regarded this impression as so acceptable that he could state it to people who had just indicated that they were Jewish. Despite Attorney Peat's mention of his own plans to attend a seder, he does not advance any belief that the arbitrator thought he or his clients were Jewish. The arbitrator was not called as a witness. CT Page 1437
The remarks of the arbitrator raise serious questions as to the fairness of his review of the positions taken by the respondents and their counsel. McNeiece argues that this court cannot, in ruling on a claim of bias, inquire into the arbitrator's determination on the merits, pursuant to dicta in Von Langendorff v. Riordan, 147 Conn. 524, 528 (1960). The Supreme Court in that case, immediately after the remark cited, observed that there was "nothing in the record to indicate partiality." This court does not read the cited comment in Langendorff as precluding a fair inquiry into the whole record, including the issues of the arbitration, to ascertain whether a general antipathy as to certain "tactics" could indeed have resulted in a biased outcome. In this case, the respondent had filed a counterclaim seeking credit for 101 items. Given the arbitrator's remarks, a reasonable person may be led to believe that his total rejection of all of these items resulted from the biased notion that their assertion was a "Jewish tactic," not a sincere claim, and that they were not given fair consideration.
If the record were devoid of any issue that could have been regarded as a "tactic," by an arbitrator with such a predisposition, the court might conclude that ethnic stereotyping could not have had any application in the adjudication. Accordingly, under the circumstances presented, the court does not find that the cited dictum in Von Langendorff prevents a review of the award of the limited sort that has been undertaken, that is, to see if there was any issue presented that may have been subject to announced bias.
The court is troubled by the fact that the respondent did not seek removal of the arbitrator; however, the rules under which the arbitration was conducted are not of record; and absent evidence that some available procedure was foregone. the court finds that the respondent was not precluded from awaiting the outcome and then invoking 52-418(a)(2), which specifically permits post-award attacks on the basis of bias.
Though arbitration is favored, see, e.g., O G/O'Connell Joint Venture v. Chase Family Partnership, No. 3, 203 Conn. 133,145 (1987) the integrity of such favor would be seriously open to question if the court upheld awards entered by an arbitrator after he had revealed a particularized bias against the ethnic group to which the representatives of a party and its counsel belong and then rejected their claim in toto. CT Page 1438
The court finds that the respondent has presented sufficient evidentiary support or its claim of bias, and the award is vacated pursuant to 52-418(a)(2) C.G.S.
The second ground raised in the motion to vacate is that any dispute between McNeiece and Tandem Food Corporation was not arbitrable, such that the arbitrator exceeded his powers by awarding damages against Tandem as well as against California Smoothie of Connecticut, Inc. because Tandem had not agreed to arbitration. The Connecticut Supreme Court has ruled that where parties do not raise arbitrability to the court before the arbitration begins, they have the option of submitting the issue to the arbitrator and challenging the award on the ground of the limits in the parties' agreement with respect to arbitration. New Britain v. Connecticut State Board of Mediation and Arbitration, 178 Conn. 557, 560 (1979); Waterbury Board of Education v. Waterbury Teachers Assn., 168 Conn. 54, 62 (1975). The Supreme Court noted in the New Britain case, however, that if the question of arbitrability is not raised as a threshold issue to the court but is submitted to the arbitrator, the parties must frame the submission carefully so as to preserve the issue of whether the dispute is within the scope of the agreement to arbitrate.
The submissions in this case are set forth in the demands for arbitration. The first of these demands was filed by Tandem, on October 30, 1991, in a document, in which Tandem identified itself as the claimant and as a "party to an arbitration agreement contained in a written contract dated August 12, 1991, providing for arbitration under the Construction Industry Arbitration Rules." After four hearing dates, Tandem objected that it was not a party to the arbitration agreement, and McNeiece successfully moved to add California Smoothie as a party. The court was not presented with any evidence that an amended submission was presented to secure a particularized adjudication of the claim of arbitrability as to Tandem Foods.
Where a submission is unrestricted, the court's review of the scope or the exercise of the arbitrator's powers is limited to determining whether the award conforms to the submission. Bodner v. United Services Automobile Association, 222 Conn. 480,487-88 (1992); New Haven v. AFSCME, Council 15, Local 530,208 Conn. 411, 415-16 (1988). The record is plain that Tandem invoked the arbitration process and identified itself as a party CT Page 1439 to the arbitration agreement in its own demand for arbitration. The submission was unrestricted, and the award conforms to the submission.
Accordingly, the court does not find that the arbitrator has been shown to have exceeded his authority, and this ground does not supply an additional reason to vacate the award.
CONCLUSION
On the basis of 52-418(a)(2) C.G.S., the court hereby vacates the arbitration award.
Beverly J. Hodgson Judge of the Superior Court