[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff is a taxi cab company whose vehicles were insured by the New Hampshire Insurance Company (New Hampshire), through the Connecticut Automobile Insurance Assigned Risk Plan (CAIARP). On October 16, 1991, New Hampshire issued a notice of cancellation of the plaintiff's coverage, claiming that the plaintiff failed to pay the entire premium that was due on October 1. The plaintiff appeals the decision of the state insurance commissioner which affirmed the cancellation. The commissioner acted pursuant Statutes 38a-329 (a) and 38a-19. The appeal is authorized by CT Page 8282 General Statutes 38a-19 and 4-183. The court finds the issues in favor off the defendant insurance department.,
The procedural history of the case is established by evidence in the administrative record, as well as by evidence adduced at a hearing held by this court pursuant to General Statutes 4-183 (i).
After receiving the notice of cancellation the two principals of the plaintiff taxi company, Messrs. Scalzi and Cotter and their attorney, F. Patrick O'Sullivan, met informally with the insurance commissioner and John R. Linden of his staff. Also present was Mr. Comstock of the department of transportation. This meeting occurred on October 30, 1991. At this meeting, the insurance commissioner recommended a settlement of the dispute between New Hampshire and the plaintiff over the amount of premium due. The commissioner's proposal was not acceptable to the plaintiff, however, and the meeting ended without any agreement.
On November 1, 1991, the plaintiff formally appealed the cancellation of its policy to CAIARP, pursuant to CAIARP's. rules. CAIARP affirmed the cancellation, and the plaintiff appealed to the commissioner pursuant to General Statutes38a-329 (a). Following an evidentiary hearing conducted personally by the commissioner, he issued a final decision on June 17, 1992. In his decision, the commissioner found that New Hampshire had used an incorrect loss experience modification factor in calculating the premium it claimed was due from the plaintiff. This resulted in an inflated premium amount. The commissioner's decision contained a revised modification factor and a correspondingly reduced premium due amount. Nevertheless, the commissioner found that there was an annual premium due and unpaid of $613,200 and that the cancellation was justified. Accordingly, the commissioner denied the plaintiff's appeal. It is this decision that the plaintiff appeals to this court.
The sole basis of the plaintiff's appeal is that the commissioner denied the plaintiff a fair hearing because he had already developed a bias against the plaintiff. At the opening of the hearing, the plaintiff, through its attorney, requested the commissioner to recuse himself. He refused to do so; instead, he conducted the hearing and ultimately rendered the final decision, adverse to the plaintiff. CT Page 8283
This court held an evidentiary hearing on the factual issues raised by the plaintiff's claim of bias, pursuant to General Statutes 4-183 (i). At that hearing, the court heard testimony from the plaintiff's principal, Mr. Scalzi; his attorney, F. Patrick O'Sullivan; and Insurance Commissioner Robert Googins. The court also received and considered evidence consisting of correspondence between the parties, which, because it was already part of the administrative record, was not separately marked as exhibits. On the basis of this testimony and other evidence, the court makes the following findings of fact:
 1. The commissioner was concerned about the threatened cancellation of the plaintiff's insurance coverage. In an effort to avoid it, he held conversations with representatives of New Hampshire and CAIARP prior to October 30, 1991.
 2. During those talks, he obtained the agreement of New Hampshire and CAIARP to a new premium rate and payment plan for the plaintiff. New Hampshire would charge a temporary rate that would be less than it had most recently billed the plaintiff but greater than the plaintiff had paid in the past. The proposal would be more favorable to the plaintiff from a cash flow standpoint because it would require level monthly premiums rather than "front loaded" payments. It would utilize loss experience over a period of three months in the future, rather than the poor past loss experience, which would be excused, to calculate the final annual premium rate.
 3. The commissioner proposed the new plan to the plaintiff and its attorney at the meeting on October 30, 1991. In addition, there was some general discussion about the plaintiff's insurance coverage, including the plaintiff's dissatisfaction with New Hampshire's claim handling and its loss experience rating practices. There was no discussion concerning the precise calculation of the modification factor or the precise calculation of a premium rate for the plaintiff's business in accordance with New Hampshire's and CAIARP's usual CT Page 8284 rules.
 4. The commissioner had not made any prejudgment as to the correct modification factor or premium rate under New Hampshire's and CAIARP's usual rules.
 5. The court does not find that the commissioner threatened the plaintiff by explicitly stating that the plaintiff would not obtain a lower rate than the settlement proposal even after a formal hearing.
Following the October 30, 1991, meeting and while appeals of the cancellation were pending at CAIARP and at the insurance department, there was an exchange of correspondence between plaintiff's counsel and the commissioner. In a letter dated November 18, 1991, the commissioner stated his opinion that the plaintiff's decision not to accept the commissioner's settlement proposal was "unintelligent", "irrational" and "sad".
On December 4, 1991, the commissioner issued a "stay of cancellation" of the plaintiff's insurance policy through December 6, the date set for a hearing on the issue. Thereafter, the plaintiff and New Hampshire agreed to an extension of insurance coverage until December 14, when the coverage was cancelled and the plaintiff became self-insured.
At the hearing before the insurance department, the crucial issue with respect to the correct premium rate was the determination of the correct modification factor in accordance with the rules of the insurance company and CAIARP. New Hampshire had originally used a modification factor of 374%, or a base premium multiplier of 4.74, in calculating the premium which it had billed to the plaintiff. After reviewing the evidence at the hearing, the commissioner determined that this factor had been based on a number of erroneous assumptions and inclusions. The commissioner determined that the factor should be 258%, or a base premium multiplier of 3.58. This change resulted in a substantial reduction in the amount of premium owed. In his decision, the commissioner set forth the newly calculated correct annual premium, the "earned premium" based on the newly agreed cancellation date, the amount paid, and the balance owed. CT Page 8285
Although the commissioner determined that the insurance company had erroneously calculated the plaintiff's premium, he nevertheless held that the cancellation was authorized, based on the plaintiff's failure to pay the amount actually owed.
The commissioner's final decision, which is the subject of this appeal, was issued June 17, 1993. At the evidentiary hearing before this court, the commissioner testified that he based his findings concerning the proper calculation of the modification factor for the plaintiff's premium solely on evidence produced at the hearing. He also testified that this factor conclusively determined what the plaintiff's actual premium would be, since the premium is calculated simply by multiplying the base premium rate charged for the taxi industry in general by the modification factor assigned to the individual insured. The base premium rate is known and approved in advance by the commissioner, and is not disputed by the plaintiff.
Subsequent to the hearing but before he issued his final decision, the commissioner received two documents on an ex parte basis. The first was a copy of the agreement between the plaintiff and New Hampshire which established the final cancellation date of the plaintiff's insurance policy as December 14, 1991. This agreement was dated December 9, 1991, three days after the commissioner's hearing. The second was a letter from New Hampshire's underwriting manager dated June 2, 1992. This letter contains New Hampshire's recalculation of the annual premium, based on the new modification factor of 258%, and the amount actually owed for coverage provided to December 14, 1991, the new cancellation date. The commissioner unquestionably utilized these documents in formulating his final decision; indeed, he attached them as appendices to his decision.
In its brief, the plaintiff contends that the commissioner was biased against it, had prejudged its appeal, and should have recused himself. The plaintiff asserts two bases for this contention: (1) that the commissioner was angry that the plaintiff refused his settlement proposal at the October 30, 1991, meeting and sought to punish the plaintiff by subsequently imposing a premium higher than that which he had proposed; and (2) that the two documents which were communicated ex parte to the commissioner after the hearing CT Page 8286 resulted in substantial prejudice to the plaintiff, requiring reversal of the commissioner's decision.
The principles of our law that govern the disposition of the plaintiff's argument concerning the commissioner's alleged pre-hearing bias are summarized by the defendant insurance department in its brief. There is a presumption that agency administrators who serve as adjudicators are unbiased. Clisham v. Bd. of Police Com'rs, 223 Conn. 354, 362,613 A.2d 254 (1992); Petrowski v. Norwich Free Academy, 199 Conn. 231,236, 506 A.2d 139, 144, appeal dismissed, 479 U.S. 802,107 S.Ct. 42, 93 L.Ed.2d 5 (1986). This presumption can be rebutted by a showing of a conflict of interest but the burden of establishing a disqualifying interest rests on the party making the contention. Id. The impermissible interest asserted must be realistic and more than remote. Id. "The mere speculative statement of bias by a participant in the . . . proceeding does not in and of itself justify a claim of disqualification." Local 530, AFSCME v. New Haven, 9 Conn. App. 260,271, 518 A.2d 941 (1986). The appearance of bias must be reasonable. Id. The canons of judicial ethics for disqualifying a judge for bias or prejudgment do not apply to administrative hearing officers. Clisham v. Bd. of Police Com'rs, supra, 361; "The mere appearance of bias that might disqualify a judge will not disqualify an arbitrator." Rado v. Bd. of Education, 216 Conn. 541, 556, 583 A.2d 102 (1990); Clisham v. Bd. of Police Com'rs, supra, 361-62.
To prove bias as a ground for disqualification of the hearing officer, the moving party must show more than an adjudicator's announced previous position about law or policy. Clisham v. Bd. of Police Com'rs, supra, 362 (1992). The showing must disclose that the adjudicator has prejudged facts that are in dispute. Id.
The test for disqualification has been succinctly stated as being whether "a disinterested observer may conclude that [the board] has in some measure adjudged the facts as well as the law of a particular case in advance of hearing it." Id. citing Cinderella Career Finishing Schools, Inc. v. Federal Trade Commission, 425 F.2d 583, 591 (D.C. Cir. 1970).
In the present case, the plaintiff does not claim that the commissioner had any personal financial stake in the outcome of its dispute with New Hampshire concerning the CT Page 8287 correct premium rate for its business. Rather, the plaintiff claims that the commissioner displayed an appearance of bias at the October 30 meeting — that is, that he had prejudged what the appropriate premium should be — and that, in subsequent correspondence, he displayed his anger that the plaintiff had refused to accept his recommendation. These circumstances show, the plaintiff argues, that the commissioner's ultimate decision in the case was the product of his bias against the plaintiff,
The court has carefully considered the evidence, including the testimony and other evidence introduced at the court hearing in this case. The court finds that the commissioner's testimony was entirely credible. In particular, the court finds that he truthfully stated that prior to the administrative hearing, he had not prejudged what the correct premium, based on approved calculation methods, should be. Although the commissioner obviously felt frustrated and exasperated at what he perceived as the plaintiff's "irrationality" in rejecting his earlier proposal, the court finds that these feelings did not taint the fact finding process that the commissioner followed at the administrative hearing, particularly on the crucial issue of the correct modification factor. Indeed, the evidence in the record fully supports all of the commissioner's findings and conclusions, as set forth in his decision, and the plaintiff does not challenge the decision on that basis.
In summary, the court concludes that the plaintiff has not sustained its burden of proving that, prior to the administrative hearing, the commissioner had become biased against it and had prejudged the factual issues which were to be considered at that hearing.
Different legal issues are raised by the ex parts correspondence received by the commissioner after the administrative hearing and included in his decision. General Statutes 4-181 (c) provides, in relevant part, as follows:
 . . . no party . . . in a contested case . . . shall communicate, directly or indirectly, in connection with any issue in that case, with a hearing officer or any member of the agency, or with any employee or agent of the agency assigned to assist the hearing officer or members of the agency in such CT Page 8288 case, without notice and opportunity for all parties to participate in the communication.
Whenever a violation of that statute is shown to have occurred, a presumption of prejudice arises, and the agency has the burden of disproving such prejudice. Henderson v. Department of Motor Vehicles, 202 Conn. 453, 457-460 (1990). In the present case, the June 2, 1992 letter from New Hampshire to the insurance department clearly violated the statute. Accordingly, there is a presumption of prejudice to the plaintiff, and the burden of proving that the ex parte communications did not substantially prejudice it shifted to the department.
The court has carefully considered the evidence in the record of the administrative proceeding and introduced at the court hearing. The court has also considered counsels' arguments as briefed and at the hearing on this appeal. Based on these considerations, the court concludes that the commissioner and the insurance department have sustained their burden of proving that the plaintiff was not prejudiced by the ex parte communications.
The primary factor which persuades the court that the ex parte documents did not adversely affect the plaintiff's case at the administrative proceeding is the nature of the documents themselves. First, the copy of the agreement between the plaintiff and New Hampshire was obviously not something that had been secret from the plaintiff. Nor was it evidence which in any way was adverse to the plaintiff's position. It merely established the termination date of the insurance coverage for the purpose of determining the final amount of premium the plaintiff owed; that is, it established a factor in an arithmetic calculation which was undisputed by the plaintiff. The commissioner's use of this factor in his decision did not involve any judgment or discretion, and it did not harm the plaintiff's interests.
Similarly, the communication from New Hampshire to the insurance department did not contain information which was itself prejudicial to the plaintiff or which was used by the commissioner in a prejudicial way. The commissioner testified and the court has found that he had already determined the correct modification factor solely on the basis of evidence adduced at the administrative hearing. This evidence, in the CT Page 8289 form of testimony from Mr. Linden, was the subject of close cross examination by the plaintiff. Once that determination had been made, however, the actual premium calculation, as contained in the ex parte June 2 letter, was a routine arithmetic task. It did not involve any judgment or discretion on the part of the commissioner. And, the court notes, the plaintiff does not dispute the calculation. Finally, the court also notes that Mr. Linden had testified at the administrative hearing that the final premium calculation would show a total of "approximately six hundred and sixteen thousand annual premium", based on the modification factor of 258%. The New Hampshire letter was simply a fine tuning of this "ballpark figure" and showed a slightly less, therefore more favorable, figure from the plaintiff's standpoint.
To summarize, on the basis of evidence in the record and adduced at the hearing before the court, the court finds that the commissioner was not biased against the plaintiff prior to the administrative hearing nor had he prejudged the issues to be considered there. The court further finds that the ex parte communications received by the commissioner after the hearing did not prejudice the plaintiff. The plaintiff does not otherwise dispute any of the factual findings or conclusions of law in the commissioner's decision. The decision must, accordingly, be affirmed.
The appeal is dismissed.
Maloney, J.