[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON CROSS MOTIONS TO CONFIRM ARBITRATIONAWARD AND TO VACATE ARBITRATION AWARD
The defendant, Michael F. Stauff, has moved the court to confirm an arbitration award of $648,960 in his favor rendered by the American Arbitration Association ("AAA") on May 18, 1995. The plaintiff, International Marine Holdings, Inc. ("IMH"), has moved the court to vacate that award.
Prior to the arbitration, IMH brought suit in this court to enjoin the arbitration and to seek damages from Stauff. This CT Page 11670 court stayed the action to allow AAA to determine, in the first instance, the question of arbitrability.
FACTS
On April 29, 1994, IMH terminated the employment of Stauff as chief financial officer of IMH. Subsequently, on May 5, 1994, Stauff filed his demand for arbitration with the American Arbitration Association. Stauff based his arbitration demand on a provision in the employment agreement between the parties dated January 1, 1992.
On May 23, 1994, IMH filed this action seeking to enjoin the arbitration as beyond the scope of the arbitration clause contained in the employment agreement. At the same time, IMH sought damages from Stauff for alleged breach of fiduciary duty as an officer and director of IMH claiming, among other things, Stauff's participation in a scheme to defraud IMH's majority shareholder.
During the pendency of the arbitration, the composition of the AAA arbitration panel changed. Over IMH's objection, one of the original arbitrators, who had taken ill, was replaced with another arbitrator who IMH claims was of assistance to Stauff's counsel and argued various pieces of evidence to benefit Stauff. IMH asserts that the replacement arbitrator questioned witnesses 19 times during the course of the arbitration hearing — "Almost all of that questioning can only be characterized as either rehabilitation of Stauff's witnesses or cross examination of IMH's witnesses."
IMH had terminated Stauff on April 29, 1994. IMH gave Stauff notice of his termination as IMH vice-president and chief financial officer. IMH handed Stauff a termination letter on, or at least dated, April 29, 1994, telling him to vacate the premises immediately. At the arbitration hearing it was revealed for the first time that IMH's new management had actually terminated Stauff on April 6, 1994 and had not even told him until they could get advice from American counsel as to the wording of the termination letter. (Transcript. Bonetti, pp. 97-104; Stauff pp. 118, 121-122.)
In its law suit against Stauff, IMH claimed that Stauff:
"Participated in a scheme to defraud IMH's majority CT Page 11671 shareholder in the sale of its interest in IMH by transferring assets to a foreign subsidiary without notifying the majority shareholder and contrary to its express instructions;
 Provided conflicting financial information to auditors employed by the venture capital firm financing management's proposed buyout of IMH;
 Provided incorrect and incomplete information to IMH's auditors and intentionally refused to provide information to the auditors on a timely basis;
 Engaged in a systematic plan designed to enhance IMH's income statement, thus misrepresenting the financial performance of IMH to shareholders and third parties;
 Failed to implement accounting controls particularly with respect to expenditures by or for the benefit of members of management; and
 Otherwise acted in its own interest and the interest of management, contrary to the interests of the corporation."
Plaintiff's Memorandum dated June 16, 1995, pp. 4-5.
THE EMPLOYMENT CONTRACT
Stauff and IMH entered into an amended and restated employment agreement dated January 1, 1992. Any right between the parties allowing or requiring arbitration of the present disputes must grow out of that agreement.
The starting point for an analysis of that agreement is section 16 which reads as follows:
 "Arbitration. Any controversy or claim arising out of or relating to this agreement or any breach thereof, shall, except as provided in section 10, be settled by arbitration in accordance with the rules of the American Arbitration Association then in effect and judgment upon such award rendered by the arbitrator may be entered in any court having jurisdiction thereof. The arbitration shall be held in Fairfield County, Connecticut. The arbitration shall include attorney's fees and costs to the prevailing party." CT Page 11672
Section 10, which is a clear exception to the arbitration provisions of the contract, is entitled "Equitable Relief". It clearly authorizes resort to the courts for equitable relief or injunctions for violation of section 7 "Confidential Information", section 8 "Intellectual Property", or section 9 "Interference With The Company." It appears clear to the court that nothing in the present dispute concerns confidential information as that term is used in section 7, or intellectual property as the term is used in section 8.
Section 9 "Interference With The Company" requires somewhat more discussion to understand the contents of the section. The section provides that the executive may not during the term of the contract:
 "(i) Solicit or entice or endeavor to solicit or entice away from the company any employee of the company, either on his own account or for any person, firm, corporation or other organization, whether or not such person would commit any breach of his contract of employment by reason of leaving the service of the company, and the executive agrees not to employ, directly or indirectly, any person who was an employee of the company or who by reason of such position at any time is or may be likely to be in possession of any confidential information or trade secrets relating to the business or products of the company or solicit or entice or endeavor to solicit or entice away from the company any present customer of the company, or at any time, take any action or make any statement the effect of which would be, directly or indirectly, to impair the good will of the company or the business reputation or good name of the company, or be otherwise detrimental to the interest of the company, including any action or statement intended, directly or indirectly, to benefit a competitor of the company. . . ."
The section goes on to provide that in the event of the executive's termination of employment pursuant to § 6.3 of the contract, there is what amounts to a one-year covenant not to compete.
Finally, the contract contains provisions concerning the termination of employment of the executive. The subject of termination is generally covered in section 6 of the contract. Section 6.3 defines the relative rights and duties of the parties in the event of termination for "due cause". The section reads as CT Page 11673 follows:
 "The employment of the executive may be terminated by the company at any time for cause (as hereinafter defined). In the event of such termination, the company shall pay to the executive the base salary provided for in section 3 (at the annual rate then in effect) accrued to the date of such termination and not theretofore paid to the executive and the bonus provided in section 3.4 prorated through the date of such termination. Rights and benefits of the executive under the benefit plans and programs fof [for] the company shall be determined in accordance with the provisions of such plans and programs. For purposes hereof, "cause" shall include (a) wilful, gross neglect or wilful, gross misconduct in the executive's discharge of his duties and responsibilities under this agreement, or (b) the executive's commission of (i) a felony or (ii) any crime or offense involving moral turpitude: provided, however, that the executive shall be given written notice by a majority of the board of directors of the company that it intends to terminate the executive's employment for cause which written notice shall specify the act or acts upon the basis of which the majority of the board of directors of the company intends so to terminate the executive's employment, and the executive shall then be given the opportunity, within 15 days of his receipt of such notice, to have a meeting with the board of directors of the company to discuss such act or acts. If the basis of such written notice is other than an act or acts described in subsection b, the executive shall be given 15 days after such meeting within which to cease or correct the performance (or nonperformance) giving rise to such written notice and, upon failure of the executive within such fifteen (15) days to cease or correct such performance (or non-performance), the executive's employment by the company shall automatically be terminated hereunder for cause. Neither the executive nor the company shall have any further rights or obligations under this Agreement, except as provided in sections 7, 8, 9, 10 and 17."
As the court has already set forth in this opinion, section 7 deals with confidential information, section 8 deals with intellectual property, section 9 deals with interference with the company, section 10 deals with the right to judicial equitable relief, and section 17, not previously discussed in this opinion, deals with "Advance of Defense Expenses". Section 17 gives the CT Page 11674 executive the right to have the costs of defense advanced to him and the right to hire counsel in any action, proceeding or claim against the executive arising out of his service to the employer.
DISCUSSION
The agreement between IMH and Stauff provided that IMH could terminate Stauff. IMH could terminate Stauff's employment for due cause at any time provided it gave Stauff prior written notice and the opportunity to cure the conduct complained of, with certain exceptions, and provided that upon termination of Stauff's employment, IMH would be obligated to pay severance pay in the amount of his base salary accrued to the date of termination. IMH could also terminate Stauff at any time without cause but would be obligated to pay severance pay in the amount of three times his base salary.
In Connecticut "every presumption" is granted in favor of the jurisdiction of arbitrators. Gurliacci v. Mayer, 218 Conn. 531,543 (1991).
In White v. Kampner, 229 Conn. 465, 476 (1994), our Supreme Court has held:
 ". . . [T]here are two procedural routes by which a party may preserve the issue of the arbitrability of a particular dispute for judicial determination. First, a party may refuse to submit to the arbitration at the outset and instead compel a judicial determination of the issue of arbitrability. . . . [citations omitted] Alternatively, threshold questions of arbitrability may properly be committed to the arbitrators themselves for determination under the terms of the contract, along with the merits of the underlying dispute. . . . In such a case a court, on a motion to vacate, may properly entertain a challenge to an award alleging disregard of the limits of the parties' agreement with respect to arbitration. . . ."
This court finds that in accordance with the holding in Whitev. Kampner, the court may once again consider the arbitrability issue.
However, the court also recognizes that the Supreme Court held in Garrity v. McCaskey, 223 Conn. 1, 4, 5 (1992):
"Because we favor arbitration as a means of settling private CT Page 11675 disputes, [the courts] undertake judicial review of arbitration awards in a manner designed to minimize interference with an efficient and economical system of alternative dispute resolution."
The court has further held:
 "The party challenging the award bears the burden of producing evidence sufficient to invalidate or void it and only upon a showing that it `falls within the prescriptions of section 52-418 . . . or procedurally violates the-parties' agreement will the determination of an arbitrator be subject to judicial inquiry.'" O G/O'Connell Joint Venture v. Chase Family Limited Partnership No. 3, 203 Conn. 133, 145-146.
In the case before the court the agreement to arbitrate is contained in the employment agreement. "A person can be compelled to arbitrate a dispute only if, to the extent that, and in the manner in which, he has agreed to do so." White, supra at 471, 472.
 "The intention to have arbitrability determined by the arbitrator can be manifest by an express provision or through the use of broad terms to describe the scope of arbitration, such as `all questions in dispute and all claims arising out of' the contract. . . ." Welch Group Inc. v. Creative Dry Well, Inc., 215 Conn. 464, 467 (1990).
Finally, in addressing the question of arbitrability and whether the agreement is restricted or unrestricted:
 "We construe a contract as a whole and all relevant provisions are considered when determining the intent of the parties." White, supra at 473.
In the present case the parties have agreed to arbitrate "any controversy or claim arising out of or related to this agreement or any breach thereof" except as provided in section 10. Section specifically authorizes resort to the judiciary and its equity powers to prevent certain enumerated potential harms to the employer. The court holds that there is no breach or threat of breach by the executive of any of the provisions of sections 7, 8 or 9 of the agreement, and accordingly the powers of the employer found in section 10 of the contract are not available to the employer. It is the court's holding that the matters before it CT Page 11676 are not removed from the contractual obligation to arbitrate found in section 16 by anything contained in section 10.
Stripped of its complexity, the present dispute concerns two basic issues. The first issue is whether or not Mr. Stauff was terminated for cause or whether he was terminated at will so as to be entitled to three years severance pay plus certain costs. The second issue centers on whether the claims of IMH against Stauff, which generally allege various breaches of duty, are matters which grow out of the "amended and restated employment agreement."
As previously stated in this opinion, IMH appears to have made no attempt to comply with the provisions of section 6.3 when it terminated Stauff's employment for cause. IMH did not voluntarily pay Stauff his three years severance pay, therefore, they must be seen as terminating Stauff for cause as more fully set forth in section 6.3 of the contract. This conclusion is supported by the manner of the termination previously recited in this opinion. IMH handed Stauff a termination letter and told him to vacate the premises immediately.
"Cause" is defined in section 6.3. If the termination was for cause, then the executive committee was required to give written notice from a majority of the board of directors that it intended to terminate for cause and under most circumstances to give Stauff the opportunity to correct alleged deficiencies.
The court recognizes that section 6.3 concludes by providing that neither party shall have any rights or obligations except as provided in sections 7, 8, 9, 10 and 17 of the agreement. Section 16 giving the right to arbitration is conspicuously absent.
However, the court notes that sections 7, 8, 9 and 17 all refer to substantive actions not procedural remedies. Only section 10, an exception found in both sections 6.3 and in section 16, provides a procedural alternative to arbitration. It is the court's holding that all disputes between the parties are subject to arbitration in accordance with the arbitration provision of section 16 unless they are withdrawn from the agreement to arbitrate by the language of section 10. It is the court's holding that a determination of the existence or non-existence of cause, at least when as here the alleged cause concerns none of the matters covered in sections 7, 8 or 9, is not a matter which has been removed from arbitration. IMH CT Page 11677 contends that the last sentence of section 6.3 removes the termination for due cause from the scope of the arbitration clause. While this sentence does purport to limit the parties' rights and obligations under the agreement when there is a termination for due cause, the sentence, when read in light of the parties' broad agreement to arbitrate in section 16, must be read to apply only when it is not disputed that due cause for termination existed and where there is no claim by the executive that IMH breached the terms of the employment agreement; However, when, as in the instant case, there is a dispute as to the existence of due cause and where it is alleged that the employer breached the terms of the agreement (i.e., by not providing the executive with notice, an opportunity to cure, or severance pay), then the court holds that the parties must proceed to arbitration because of the existence of a claim or controversy arising out of or relating to the employment agreement or a breach thereof.
However, IMH goes on to contend that even if Stauff's claims were arbitrable, the arbitrators in rendering their award improperly considered non-arbitrable issues. These issues are IMH's claims of fraud and breach of fiduciary duty which are alleged as separate from any claims that arose under the employment agreement.
When one examines IMH's complaint as a plaintiff, IMH alleges in paragraph 5 of the complaint that Stauff was employed as a vice president of finance and chief financial officer pursuant to an employment agreement and that pursuant to that agreement he was to perform duties in a diligent and faithful manner. In paragraph 6, IMH alleges that Stauff failed to fulfill his duties and acted "in wilful, gross neglect of his obligations under the employment agreement." In paragraph 12, IMH alleges that Stauff's acts and omissions "constitute wilful, gross neglect, wilful gross misconduct and other grounds for IMH to terminate Stauff's employment for cause." In paragraph 14, IMH alleges "the employment agreement . . . does not provide for arbitration regarding a termination for cause as the term is defined under the employment agreement. . . ." All of these allegations either arise out of or are related to the employment agreement between Stauff and IMH. These paragraphs are incorporated by reference into Counts I through VI of the complaint.
In Count I, IMH raises the issue of the arbitrability of termination. In Count II, IMH alleges that Stauff breached the employment agreement. Counts III through VI are based in whole or CT Page 11678 in part on allegations concerning the employment agreement and therefore arise out of or relate to the employment agreement or the breach thereof.
IMH's final claim is that the record supports evident partiality and bias on the part of one of the arbitrators. IMH argues that arbitrator Daniel Brennan was partial to Stauff as he appeared to be assisting Stauff's counsel in arguing the various pieces of evidence for the benefit of Stauff.
General Statute § 52-418(a)(2) provides in pertinent part:
 "Upon the application of any party to an arbitration, the superior court . . . or . . . any judge thereof shall make an order vacating the award . . . if there has been evident partiality or corruption on the part of any arbitrator. . . ."
However, the Appellate Court has also held that the burden of proving bias or evident partiality pursuant to the above-quoted section rests on the party making the claim. Vincent BuildersInc. v. American Application Systems. Inc., 16 Conn. App. 486,495 (1988). The mere appearance of bias which might disqualify a judge will not disqualify an arbitrator. Petrowski v. NorwichFree Academy, 199 Conn. 231, 236-237 (1986). Evident partiality will be found where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration. To put the matter in the vernacular, evident partiality exists where it reasonably looks as though a given arbitrator would tend to favor one of the parties. Local 530, AFSCME, Council 15 v. NewHaven, 9 Conn. App. 260, 274 (1986).
In the present case arbitrator Fred Weisberg was removed for health reasons and replaced by Daniel Brennan. Brennan was one of the arbitrators whose name appeared on the initial list of AAA arbitrators and whose name was not struck off the initial list by either party. The court notes that each party had three "peremptory" strikes which could have been used to removed arbitrators from the initial list.
In finding that there was no "evident partiality" on the part of an arbitrator, a Superior Court has held that pointed colloquy between an arbitrator and an attorney for one of the parties is not indicative of favoritism, prejudgment on the merits or loss of impartiality on the part of that arbitrator. Hartford-PoliceUnion v. City of Hartford, 14 Conn. L. Rptr. 76 (April 13, 1995, CT Page 11679 Sheldon, J.). This court has held that evidence of a "personality conflict" between the plaintiff and the arbitrators, without more, was insufficient to prove evident partiality. Setlin v.Aetna Life and Casualty Co., Super. Ct. Judicial District of New Haven, Docket No. 287764 (August 26, 1994, Booth, J.).
Examples of successful claims of evident partiality include: ex parte communications, Vincent Builders Inc. v. AmericanApplication Systems, 16 Conn. App. 486, 496 (1988); comments evincing improper racial, ethnic or religious bias towards the parties, McNeese Construction v. Tandem Food Corp., Superior Court, Judicial District of New Haven, Docket No. 341121 (February 5, 1993, Hodgson, J.); independent investigation of matters subject to arbitration by arbitrators without notice to the parties or the acceptance of gifts from a party to arbitration, O G/O'Connell v. Chase Family Limited PartnershipNo. 3, 203 Conn. 133, 146-147 (1987).
The court finds that in the present case a reasonable person would not automatically conclude that Brennan's questioning of the IMH witnesses indicates that Brennan was partial to Stauff. While the court believes that Brennan was the arbitrator who most rigorously questioned witnesses and that Brennan was the arbitrator who most rigorously questioned IMH's evidence, a reasonable person could conclude that Brennan was merely attempting to understand the testimony and evidence presented in conjunction with complex issues in the underlying arbitration. Even if Brennan were skeptical of IMH's witnesses and evidence, he had the right to ask questions in an attempt to ascertain the truth and reach a correct decision. The court rejects IMH's claim of "evident partiality" on the part of arbitrator Brennan because it finds that such claim is not supported by the record.
CONCLUSION
Under an unrestricted submission the arbitrator's decision is final and binding and thus the courts will not review the evidence considered by the arbitrators nor will they review the award for errors of law or fact. American Universal InsuranceCompany v. DelGreco, 205 Conn. 178, 186 (1987). This limited scope of judicial review is warranted if the parties had voluntarily bargained for a decision of the arbitrator and as such the parties are presumed to have assumed the risks of, and waived objections to, that decision. Id., 186-187. The court holds that the arbitration clause in the present case is broad CT Page 11680 and unrestricted except insofar as it was restricted by the specific exemptions contained in section 10. Nothing before the court is within the exception set forth in section 10. Both the cause for Stauff's termination and the various claims by IMH against Stauff arise out of the employment agreement and are subject to arbitration in accordance with section 16 of the contract between the parties.
Because both Stauff's and IMH's claims arise out of or were related to the employment agreement or the breach thereof, their respective claims were appropriately arbitrable. IMH has failed to substantiate its claim of "evident partiality". Therefore the court denies IMH's motion to vacate and grants Stauff's motion to confirm the arbitration award.
THE COURT
BY: KEVIN E. BOOTH, JUDGE