## VINCENT BUILDERS, INC. *v.* AMERICAN APPLICATION SYSTEMS, INC.
### (6198)

DUPONT, C. J., BORDEN and SPALLONE, Js.

Argued June 10—decision released September 27, 1988

*James R. Fogarty,* with whom, on the brief, was *Joseph T. O'Connor,* for the appellant (plaintiff).

*Eileen M. Ellsworth,* with whom, on the brief, was *Mark J. Kovak,* for the appellee (defendant).

DUPONT, C. J. The plaintiff appeals from the judgment of the trial court granting the defendant's application to confirm an arbitration award and denying the plaintiff's application to vacate that arbitration award. The plaintiff claims that the trial court erred (1) in refusing to vacate the arbitration award on the ground that it was made in favor of the "wrong party," American Application Systems, Inc., a New York corporation which was not a party to the contract that is the subject of this dispute, (2) in finding that the plaintiff waived its claim that the "wrong party" demanded arbitration, (3) in ruling that any defect in the oath taken by the arbitrators at the commencement of the arbitration proceedings was rectified by the subsequent proper administration of the oath, (4) in refusing to consider evidence that the plaintiff proffered after the close of the arbitration hearings, (5) in ruling that the plaintiff failed to prove that one of the arbitrators was biased against it, and (6) in concluding that the plaintiff failed to prove that one of the arbitrators engaged in improper ex parte communication with the defendant's attorney and representatives of the defendant corporation.

The following facts are relevant to this appeal. The plaintiff entered into a contract with the defendant for the installation of drywall and exterior walls on two condominium projects. The contract provided that all disputes arising under the contract were to be decided by arbitration. Pursuant to the contract, the defendant filed a demand for arbitration, which proceedings required twelve hearings over a two month period.[1] Subsequent to the close of the hearings but prior to the arbitrators' award, the plaintiff sought to open the

[1] Three arbitrators served on the arbitration panel, two by mutual choice of the parties, namely, Henry T. Jevne and Glen T. Cunningham, and one at the recommendation of the American Arbitration Association, Dan S. Brock.

hearings to present new evidence regarding the defendant's allegation of damages. This request was denied. The arbitrators' award was rendered in favor of the defendant in the amount of $149,646, plus legal interest.

"Arbitration is favored by courts as a means of settling differences and expediting the resolution of disputes." *Wolf* v. *Gould,* 10 Conn. App. 292, 296, 522 A.2d 1240 (1987). "There is no question that arbitration awards are generally upheld and that we give great deference to an arbitrator's decision since arbitration is favored as a means of settling disputes." *Hartford* v. *Local 760,* 6 Conn. App. 11, 13, 502 A.2d 429 (1986). "The party challenging the award bears the burden of producing evidence sufficient to invalidate or avoid it, and only upon a showing that it 'falls within the proscriptions of § 52-418[2] of the General Statutes, or procedurally violates the parties' agreement' will the determination of an arbitrator be subject to judicial inquiry." *O & G/O'Connell Joint Venture* v. *Chase Family Limited Partnerhip No. 3,* 203 Conn. 133, 145–46, 523 A.2d 1271 (1987).

The plaintiff's first claim is that the arbitration award was erroneously made in favor of American Application Systems, Inc., a New York corporation, rather

[2] General Statutes § 52-418 (a) provides: "Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, any judge thereof, shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

than the defendant, American Application Systems, Inc., of New Jersey, the party that entered into the contract with the plaintiff. The plaintiff argues that by so rendering the award, the arbitrators exceeded their authority under the contractual agreement between the plaintiff and the defendant providing for arbitration and, consequently, the arbitration award should be vacated.

It is not disputed that the defendant mistakenly filed its demand for arbitration in the name of American Application Systems, Inc., and that the arbitration award was in fact made in favor of American Application Systems, Inc. The record is clear, however, that both parties entered into the arbitration proceedings without raising any question as to the status of the defendant and that there was no question that American Application Systems, Inc., of New Jersey was the corporation appearing at the arbitration proceedings. Furthermore, the defendant's counsel stipulated at trial that the arbitration award solely concerned American Application Systems, Inc., of New Jersey and that it, rather than American Application Systems, Inc., was the actual party in interest. Our review of the record fully supports the trial court's conclusion "that the inaccurate naming of the actual party concerned had no bearing on either the arbitration or its outcome." There is an absence of any prejudice to the plaintiff due to the inaccurate naming of the defendant in the arbitration award and, therefore, there is no merit to the plaintiff's argument.

The plaintiff's second claim is that the trial court erred in finding that, pursuant to rule 38 of the Construction Industry Arbitration Rules of the American Arbitration Association (AAA),[3] the plaintiff waived

---

[3] Rule 38 of the Construction Industry Arbitration Rules of the American Arbitration Association provides that "[a]ny party who proceeds with

any objection it may have had to the naming of the "wrong party."

The plaintiff does not dispute that it did not object to the defendant's status until after the close of the arbitration proceedings. The plaintiff argues, however, that since it was unaware of the existence of the New York corporation, American Application Systems, Inc., until after the close of the arbitration proceedings, the principle that "[a] necessary element to waiver is the requisite knowledge of the right"; *Reinke* v. *Greenwich Hospital Assn.*, 175 Conn. 24, 27, 392 A.2d 966 (1978); has not been met in this case. We disagree.

The plaintiff entered into a contract with American Application Systems, Inc., of New Jersey, but received the demand for arbitration in the name of American Application Systems, Inc. The plaintiff could have raised this discrepancy at any time during the two month period in which the arbitration proceedings took place. The plaintiff's argument that it was unaware of the existence of American Application Systems, Inc., until after the close of the arbitration proceedings only makes clear that the plaintiff did not question the status of the defendant throughout the course of the arbitration proceedings. Under these circumstances, the trial court did not err in finding that the plaintiff had waived any objection to the inaccurate naming of the defendant in the arbitration proceedings.

The plaintiff's third claim is that the trial court erred in ruling that any defect in the oath taken by the arbitrators at the commencement of the arbitration proceedings was rectified by the subsequent proper admin-

the arbitration after knowledge that any provision or requirement of these rules has not been complied with and who fails to state an objection thereto in writing, shall be deemed to have waived the right to object." The contract between the plaintiff and the defendant provided that the arbitration proceedings were to be conducted in accordance with the Construction Industry Arbitration Rules of the AAA.

istration of the oath.[4] At the commencement of the arbitration proceedings, all three arbitrators, led by arbitrator Henry T. Jevne, swore to "faithfully and fairly hear and examine the matters in controversy and make a just award to the best of [their] understanding." Following the second day of hearings, arbitrator Glen T. Cunningham executed a written notarized oath; following the third day of hearings, arbitrator Dan S. Brock also executed a written, notarized oath.[5] The plaintiff argues that the failure of Brock and Cunningham to be sworn by a proper officer pursuant to General Statutes § 1-24 prior to the commencement of the arbitration proceedings, as required by General Statutes § 52-414 (d), requires the vacating of the arbitration award. The plaintiff argues that any subsequent oath executed by Brock and Cunningham cannot rectify their initial failure to be properly sworn.

General Statutes § 1-24 contains a list of persons qualified to administer oaths. That list does not include laymen. Accordingly, Jevne, a trained architect, was not qualified to administer the oath required by General Statutes § 52-414 (d) to the other members of the arbitration panel, namely, Cunningham, an attorney, and Brock, a contractor.[6] That irregularity, however, does not constitute a sufficient reason to vacate the

---

[4] General Statutes § 52-414 (d) provides: "Before hearing any testimony or examining other evidence in the matter, the arbitrators and umpire shall be sworn to hear and examine the matter in controversy faithfully and fairly and to make a just award according to the best of their understanding, unless the oath is waived in writing by the parties to the arbitration agreement." General Statutes § 1-24 provides, inter alia, that notaries public are officers who may administer oaths.

[5] Jevne had executed a written, notarized oath prior to the commencement of the arbitration proceedings. We note that the case of *Reinke* v. *Greenwich Hospital Assn.*, 175 Conn. 24, 27, 392 A.2d 966 (1978), cited by both parties in their briefs, is inapposite to the present case. In *Reinke*, the trial court's vacation of an arbitration award was upheld where no oath had been administered either before or during the arbitration proceedings, and the parties did not waive the oath requirement in writing.

[6] The plaintiff does not dispute that Jevne was properly sworn by a notary public prior to the commencement of the arbitration proceedings.

award. General Statutes § 52-418 delineates the grounds upon which an arbitration award may be vacated.[7] That list does not include an irregularity in the swearing in process as one of those grounds. "Courts favor arbitration as a means of settling differences and arbitration awards are generally upheld except where an award clearly falls within the proscriptions of § 52-418 of the General Statutes." (Footnote omitted.) *Board of Education* v. *Bridgeport Education Assn.,* 173 Conn. 287, 290, 377 A.2d 323 (1977).

We conclude, therefore, that the trial court did not err in refusing to vacate the arbitration award on these grounds.

The plaintiff's fourth claim is that the trial court erred in finding that the arbitrators' refusal to hear evidence offered by the plaintiff after the close of the hearings did not deprive the plaintiff of a full and fair hearing. The plaintiff claims that the proffered evidence was obtained from the Internal Revenue Service after the close of the hearings and pertained to the defendant's failure to pay federal payroll taxes. The plaintiff argues that this evidence contradicted the defendant's assertion at the arbitration proceeding concerning $90,000 in payroll expenses, which figure the plaintiff claims was relied upon by the arbitration panel in fashioning its award. The plaintiff claims that the refusal to hear

---

[7] General Statutes § 52-418 provides in pertinent part: "VACATING AWARD. (a) Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, any judge thereof, shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

the new evidence violated General Statutes § 52-418 (a) (3) and requires the vacation of the arbitration award.

Arbitrators act with substantial discretion in determining the admissibility of evidence, and it is within their broad discretion to decide whether additional evidence is required or would merely prolong the proceedings unnecessarily. *O & G/O'Connell Joint Venture* v. *Chase Family Limited Partnership No. 3*, supra, 148. Section 52-418 (a) (3) does not mandate "that every failure or refusal to receive evidence, even relevant evidence, constitutes misconduct. To establish that an evidentiary ruling, or lack thereof, rises to the level of misconduct prohibited by § 52-418 (a) (3) requires more than a showing that an arbitrator committed an error of law. Rather, a party challenging an arbitration award on the ground that the arbitrator refused to receive material evidence must prove that, by virtue of an evidentiary ruling, he was in fact deprived of a full and fair hearing before the arbitration panel." Id., 149.

We agree with the trial court's finding that the plaintiff failed to demonstrate that the proffered evidence was material to the panel's decision and that, therefore, the plaintiff failed to carry its burden of proving that it was deprived of a full and fair hearing. Our review of the record indicates that the plaintiff failed to present any evidence that the defendant's testimony regarding payroll expenses was relied upon by the panel in reaching its award, or any evidence as to the effect that the newly discovered evidence would have had on the outcome of the arbitration proceedings. In the absence of a showing of the requisite degree of materiality of the proffered evidence, the plaintiff's claim of error must fail.

The plaintiff's next claim is that the trial court erred in failing to find that one of the arbitrators was biased against the plaintiff. The plaintiff's allegation of bias is based on two incidents that occurred during the arbitration proceedings which were disputed

in the trial court. First, the plaintiff's counsel at the arbitration proceedings testified that at the hearing on the application to confirm the arbitration award, arbitrator Cunningham informed her that Brock had referred to the principal of the plaintiff corporation, Vincent Vartuli, in ethnically derogatory terms. Cunningham testified, however, that he did not recall any such comments by Brock. Second, the plaintiff's counsel at the hearings testified that Cunningham approached her and expressed his surprise over the hostility exhibited by Brock toward Vartuli, and that he would contact the AAA concerning Brock's behavior. Cunningham testified, however, that it was the plaintiff's counsel who approached him regarding the alleged abruptness and rudeness of Brock, and Cunningham responded that as a "courtesy" he would contact the AAA.[8] Cunningham testified that he did note a "personality conflict" between Brock and Vartuli, which was limited to one hearing and was not unusual given the lengthy proceedings and close quarters in which they took place. In addition, the plaintiff alleged bias in that Brock interrupted Vartuli several times during his first day of testimony, and that Brock observed that a photograph entered into evidence by the plaintiff could have been fabricated for use in the proceedings. The trial court found that the evidence presented by the plaintiff concerning the claim of bias was inconclusive, and the court declined to vacate the award on that basis.

An allegation that an arbitrator was biased, if supported by sufficient evidence, may warrant the vacation of the arbitration award. *Schwarzschild* v. *Martin,* 191 Conn. 316, 327, 464 A.2d 774 (1983); *Local 530, AFSCME, Council 15* v. *New Haven,* 9 Conn. App. 260, 267, 518 A.2d 941 (1986). The burden of proving bias or evident partiality pursuant to § 52-418 (a) (2) rests

---

[8] Arbitrator Glen T. Cunningham did in fact report the incident to the AAA. No further investigation or disciplinary action resulted, however.

on the party making such a claim, and requires more than a showing of an "appearance of bias." *Local 530, AFSCME, Council 15* v. *New Haven,* supra, 265, 274. In construing § 52-418 (a) (2), this court concluded that evident partiality "will be found where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration. To put it in the vernacular, 'evident partiality' exists where it reasonably looks as though a given arbitrator would tend to favor one of the parties." Id., 274.

The evidence offered by the plaintiff in support of its claim of bias was contested by the defendant at trial. Furthermore, Brock's comment regarding the photographic evidence offered by the plaintiff, and occasional interruption of the testimony of Vartuli, alone cannot support a reasonable conclusion of evident partiality. In light of the evidence presented by the plaintiff, we cannot conclude that the trial court erred in finding that the plaintiff had failed to provide sufficient evidence to carry its burden of proving bias on the part of Brock. *Schwarzschild* v. *Martin,* supra.

The plaintiff finally claims that the trial court erred in finding that the plaintiff failed to prove that Brock engaged in improper ex parte communication with representatives of the defendant corporation and its attorney. The plaintiff claimed that numerous such communications occurred during the course of the arbitration proceedings. The plaintiff also presented the testimony of one of its employees who claimed to have overheard the word "invoices" during one of these conversations. The plaintiff alleges that later that day the defendant put into evidence numerous invoices. Vartuli also testified that he overheard such ex parte conversations, but that they ended when he entered the room.

At trial, Brock admitted to numerous ex parte conversations with the defendant's representatives during the course of the hearings. Brock testified, however,

that these conversations did not pertain to the substance of the arbitration proceedings but rather were just "small talk" regarding the weather or coffee. The nonsubstantive nature of these conversations was corroborated by testimony of representatives of the defendant. The use of the word "invoice" during one of the conversations was not denied but was explained as relating to a payment for the hotel room in which the hearings were to take place.

Because the plaintiff claims that the ex parte communications were improper and were misconduct within the terms of § 52-418 (a) (3), we must determine what is involved in the concept of arbitral misconduct. An arbitrator's participation in ex parte communications with a party or witness, without the knowledge or consent of the other party, may constitute misconduct on the part of the arbitrator sufficient to warrant vacation of an arbitration award. *O & G/O'Connell Joint Venture* v. *Chase Family Limited Partnership No. 3,* supra, 146–47. The cases cited in the *O & G/O'Connell Joint Venture* for this proposition, however, make it clear that the ex parte communications must involve facts, issues or evidence relevant to the subject of the arbitration proceedings. See *Whitehair* v. *Kansas Flour Mills Corporation,* 127 Kan. 877, 879, 275 P. 190 (1929); *Matter of Goldfinger* v. *Lisker,* 68 N.Y.2d 225, 232, 500 N.E.2d 857, 508 N.Y.S.2d 159 (1986).

In this case, the trial court found that the plaintiff had not shown that the ex parte communications were improper, that is, related to facts and circumstances involving the arbitrable matter itself. Thus, "misconduct" within the meaning of § 52-418 (a) (3) was not established. The trial court did not err, therefore, in failing to vacate the award pursuant to § 52-418 (a) (3).

There is no error.

In this opinion the other judges concurred.