[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON APPLICATION TO VACATE ARBITRATION AWARD
STATEMENT OF THE CASE
On April 10, 1995, the plaintiff, Bridgeport Firefighters CT Page 6865 Association, IAFF, Local 834 (Union), filed an application to vacate an arbitration award regarding a collective bargaining agreement between the Union and the defendant, City of Bridgeport (City). The Union alleges the following facts in its application. The City and the Union were parties to a collective bargaining agreement which expired on June 30, 1992. The City and the Union failed to resolve issues regarding a successor agreement, and the issues went to an arbitration panel pursuant to General Statutes § 7-473c, which issued an award on December 30, 1994. On January 25, 1995, the City Council rejected the award by a two-thirds vote. The matter went to a second arbitration panel which rendered an award on March 11, 1995.
The Union now moves to vacate the award on the grounds that the award was procured by undue means, there was partiality by the panel, the panel has engaged in misconduct to the prejudice of the Union, the arbitrators exceeded their powers or imperfectly executed their powers, the award does not conform to the submission and the award offends public policy.
The Union filed a memorandum of law in support of its application to vacate on May 30, 1996, and the City filed a brief in opposition on September 13, 1996.
DISCUSSION
"The scope of judicial review in an arbitration action is expressly limited by the terms of § 52-418. . . . In the absence of a showing of a violation of the statute, the courts should not interfere in the arbitral decision. . . . In addition, [e]very reasonable presumption and intendment will be made in favor of the [arbitral] award and of the arbitrators' acts and proceedings . . . Thus, as the party challenging the award, the plaintiff bears the burden of producing evidence sufficient to demonstrate a violation of § 52-418." (Citations omitted; internal quotation marks omitted.) Metropolitan DistrictCommission v. AFSCME, 237 Conn. 114, 118-19, 676 A.2d 825
(1996). General Statutes § 52-418 provides in relevant part that "[u]pon the application of any party to an arbitration, the superior court . . . shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of CT Page 6866 misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of the party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter was not made."
General Statutes § 7-473c(d)(2) provides in relevant part that "[i]n arriving at a decision, the arbitration panel shall give priority to the public interest and the financial capability of the municipal employer, including consideration of other demands on the financial capability of the municipal employer. The panel shall further consider the following factors in light of such financial capability: (A) The negotiations between the parties prior to arbitration; (B) the interests and welfare of the employee group; (C) changes in the cost of living; (D) the existing conditions of employment of the employee group and those of similar groups; and (E) the wages, salaries, fringe benefits, and other conditions of employment prevailing in the labor market, including developments in private sector wages and benefits."
The Union first contends that the arbitration panel exceeded its powers, or imperfectly executed those powers because each member of the arbitration panel did not state the specific reasons and standards he used in making his choice on each unresolved issue, as is required by General Statutes §7-473c(d)(1). The City responds that the arbitrators have stated that the reasoning and standards stated in the award were adopted by all of the members of the arbitration panel.
Section 7-473c(d)(5) states in relevant part that "[t]he decision of the arbitrators or single arbitrator shall be in writing and shall include specific reasons and standards used by each arbitrator in making his decision on each issue." The Union has submitted legislative history arguing that the policy behind this portion of the statute is that each arbitrator reveal his independent thought process in the award. The City has not contested this interpretation of the statute, but only argues that the award conforms to the statutory requirements.
The report of the second arbitration panel states that "[t]he decisions on the individual issues hereinafter set out are the decisions agreed to by all members of the panel. The CT Page 6867 specific reasons given and standards used in said decisions are adopted by all members of the panel." Section 7-473c(d)(5) merely states that the each arbitrator must state his specific reasons and standards used in making his decision on each issue. It does not state that each must arbitrator reveal his thought process used in arriving at those reasons or to engage in redundant repetition. Furthermore, every reasonable presumption is to be made in favor of the arbitrators' acts. MetropolitanDistrict Commission v. AFSCME, supra, 237 Conn. 119. As the arbitrators have stated that the reasons and standards set forth in the award are those of all the arbitrators, the court must presume that, as stated, the reasons and standards applied in the award are those of each arbitrator individually, as well as the panel as a whole.
The Union next maintains that there has been evident partiality on the part of Arbitrator James H. Stewart in that he has previously served as an arbitrator involving municipal organizations in Bridgeport. The City asserts that the Union has presented no evidence to show partiality on the part of Arbitrator Stewart.
"`The mere appearance of bias that might disqualify a judge will not disqualify an arbitrator.'" Clisham v. Board of PoliceCommissioners, 223 Conn. 354, 361-62, 613 A.2d 254 (1992). "An allegation that an arbitrator was biased, if supported by sufficient evidence, may warrant the vacation of the arbitration award. . . . The burden of proving bias or evident partiality pursuant to § 52-418 (a)(2) rests on the party making such a claim, and requires more than a showing of an `appearance of bias.'. . . [E]vident partiality `will be found where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration. To put it in the vernacular, "evident partiality" exists where it reasonably looks as though a given arbitrator would tend to favor one of the parties.'" (Citations omitted.) Vincent Builders v.American Application Systems, 16 Conn. App. 486, 494-95,547 A.2d 1381 (1988).
The parties have stipulated that "James Stewart, one of three neutral arbitrators on the Second Arbitration Panel for the above captioned Bridgeport Firefighters arbitration proceedings, was an arbitrator and rendered decisions on at least two other City of Bridgeport arbitration proceedings under C.G.S. § 7-473c during the same period as the Bridgeport CT Page 6868 Firefighters Association hearing. Specifically, Mr. Stewart was the neutral arbitrator on the Bridgeport Police Department's arbitration hearings and the Health Care/Nurse's arbitration hearings." The Union argues that in the other arbitrations Stewart heard evidence regarding the financial difficulties of Bridgeport, and because the panel is required by § 7-473c(d)(2) to "give priority to the public interest and the financial capability of the municipal employer," this demonstrates partiality on the part of Stewart. However, it does not logically follow that because Stewart heard evidence in other proceedings regarding the financial problems of the City of Bridgeport he must therefore be biased towards the City. Moreover, by statute, the arbitrators are required to give priority to the financial capability of the City. Since the parties have stipulated that the other proceedings occurred at the same time as the proceeding in question, the financial condition of the City would be similar if not the same in all of the proceedings. Thus, the fact that Stewart heard evidence in other matters as to the fiscal condition of the City does not show evident partiality on his part, or even the appearance of impropriety, but only that he may have acquired certain information or expertise.
The Union next claims that the panel exceeded its powers by considering a report of the office of policy and management and a resolution of the Bridgeport Financial Review Board, which the Union argues is not permitted by § 7-473c(d)(5). The City contends that those documents were properly considered.
Section 7-473c(d)(5) states in pertinent part that "[w]ithin twenty-five days of the receipt of an arbitration award issued pursuant to this section, the legislative body of the municipal employer may reject the award of the arbitrators . . . by a two-thirds majority vote of the members of such legislative body present at a regular or special meeting called and convened for such purpose. Within ten days after such rejection, the legislative body or its authorized representative shall be required to state, in writing, the reasons for such vote and shall submit such written statement to the State Board of Mediation and Arbitration and the municipal employee organization. Within ten days after receipt of such notice, the municipal employee organization shall prepare a written response to such rejection and shall submit it to the legislative body and the State Board of Mediation and Arbitration. . . . The review conducted pursuant to this subdivision shall be limited CT Page 6869 to the record and briefs of the hearing pursuant to subsection (c) of this section, the written explanation of the reasons for the vote and a written response by either party."
The Union contends that the arbitrators improperly considered evidence which the City submitted with its reasons for rejecting the first arbitration award.
However, § 7-473c(d)(5) states that, as part of their review, the arbitrators are to consider the written explanation of the reasons for the rejection. The documents the Union takes exception to are incorporated within the reasons given by the City for rejecting the first award. The first reason given by the City is the inequity between sacrifices made by the other city unions and the plaintiff. The City states in its written reasons that "[t]he total cost of the wages awarded to the fire union is 15.7% over the four years of the contract, which equals a 3.9% cost per year. (Compounded base wage increase of 14.2% and 1.5% bonus) (See attached OPM analysis) The raises for the other bargaining units do not come close to those increases." (Emphasis added; emphasis deleted.) The City also stated in its reasons for rejection that "[t]he Review Board, as a result of this award, passed a resolution where it found the wages granted are more than allowed by the approved three year financial plan and the City's FY 94-95 budget. The Review Board then directed the City to take necessary actions to insure compliance with the approved plan. (See attached resolution)." (Emphasis added.) The court concludes that the documents the Union takes exception to were incorporated within the City's reasons for rejecting the first arbitration award, and were therefore properly reviewed by the arbitration panel in determining its award.
The Union next maintains that regarding issue #9, heart and hypertension, the arbitrators incorrectly applied a state statute. "[A]n award that manifests an egregious or patently irrational application of the law is an award that should be set aside pursuant to § 52-418 (a)(4) because the arbitrator has exceeded [his] powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made. We emphasize, however, that the manifest disregard of the law ground for vacating an arbitration award is narrow and should be reserved for circumstances of an arbitrator's extraordinary lack of fidelity to established legal principles." (Internal quotation marks omitted.) SaturnConstruction Co. v. Premier Roofing Co., 238 Conn. 293, 304, CT Page 6870680 A.2d 1274 (1996).
The arbitration panel stated in its award that "[t]he City here proposes to remove from the contract the presumption that any condition of impairment of health caused by hypertension or heart disease shall be presumed to have been suffered in the performance of his/her duties. This language, when negotiated, represented a mere repetition in the contract of a benefit which was afforded to all police and fire employees by State statute. However, the contract language has not changed to reflect recent amendments of the statute, so it now confers a greater benefit on members of this bargaining unit than is theirs by statutory right. With the language in the contract, the City will not be allowed to benefit from any further statutory modifications. It is not reasonable to retain this right for fire employees of one of Connecticut's poorest cities if the right does not continue to exist for employees in towns and cities far better able to afford it than Bridgeport." See General Statutes § 7-314a(d).
In their award, the arbitrators' did not conclude that § 7-314 (a)(d) requires that the City apply the presumption included in the statute, but rather determined that, considering the financial condition of the City, it is not reasonable for the Union to have the benefit of a presumption greater than that guaranteed by statute. Accordingly, the court finds no basis to the Union's claim that the arbitrators misapplied the law.
The Union also contends that the arbitrators exceeded their powers in granting the City's wage proposals because they stated that "there was no indication of where the projected wage increases for all City employees would come from, especially in view of the probability of diminished State and Federal funding." The Union argues that the panel should not have considered the mere possibility of a reduction in funding in its decision, or that it should have made its decision conditional upon the reduction of funding.
The arbitrators' reference to a reduction of state and federal funding is but one phase in a three page discussion of the statutory factors applied to make their decision regarding wages. The arbitrators note that the City has the highest effective tax rate and the second lowest per capita income in Connecticut; it is the poorest of the 35 most populous cities and towns; the grand list has gone down; collections are down; the mill rate has increased 18% since 1988; the infrastructure CT Page 6871 needs funding; one thousand employees have been laid off since 1990; the City has an unfunded pension liability of $342,691,139; the Union has received greater percentage wage increases than the other three largest City unions since 1980; and that the other unions had a two week furlough without pay for two years, while the Union did not. Thus, the arbitrators' reference to state and federal funding was but a small part of the reasons given for accepting the City's proposal. Moreover, the arbitrators could not have made their decision on wages conditional as § 7-473c requires the arbitrators to "accept the last best offer of either of the parties."
Finally, the Union argues that the arbitrators' decision regarding management rights was based upon an unsupported assertion of the City that the Union had agreed to the proposal in negotiations. The City responds that the decision was based on other reasons, not upon any unsupported assertion.
The award does state "[t]he language here was agreed to by the Union in negotiations although it was part of a package which did not result in an agreement." However, the arbitrators do not rely upon this statement, but analyze it according to the statutory criteria. The arbitrators stated that "[t]he previous contract for this unit did not contain management rights clause. The City, of course, retains management rights whether stated or not." The arbitrators further noted that the arbitration panel for the last police contract awarded the same management rights, and other City units have similar management rights provision. The arbitrators also determined that such a management rights clause does not remove the Union's rights granted by statute to bargain collectively over wages, hours and conditions of employment.
CONCLUSION
Accordingly, for the foregoing reasons the Union's application to vacate the arbitration award is denied.[1]
STEVENS, J.