[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
These various consolidated matters were, by stipulation of the parties, referred by the court to a program of alternative dispute resolution (ADR) pursuant to P.B. § 23-67. The parties agreed in writing that they would initially engage in mediation with the chosen neutral, and if that process was unsuccessful, would proceed to an adversarial proceeding.
The court appointed Dr. Harold B. Schramm, an attorney-at-law, as arbitrator and he commenced to hear evidence on the submissions of the parties. Hearings consumed some 28 days covering a period beginning in September, 1997 and ending with an award issued on August 18, 1998. The issues and facts presented for determination by the arbitrator were extensive and complex covering many years of on-going relationships among the parties.
Before the court now are motions of the various parties. One interest group seeks confirmation of the award, and the other asks the court to vacate the award. These two interest groups are, on the one hand, the "Handrinos Parties" consisting of Chris CT Page 4508 Handrinos, Vasiliki Handrinos, George Katsouris, Elaine Katsouris and the Norwalk Inn Conference Center, Inc., who seek confirmation, and on the other hand, the "Lathouris Parties," made up of Peter Lathouris, Patricia Lathouris, George Spanos and William Spanos, Trustee, who request the court to vacate the award. For all the reasons to follow, the court is obliged to confirm the arbitrators decision and the award.
The first issue confronting the court is whether or not the proceeding before the neutral was an "arbitration" under Chapter 909 of the Connecticut General Statutes. This determination implicates such questions as whether an arbitrators oath was required pursuant to C.G.S. 52-414(d). The Handrinos Parties urge the court to find that P.B. § 23-67 provides for a program of alternate dispute resolution, that the parties did not specifically say they were to engage in arbitration, and therefore, that they are not subject to the provisions of the Connecticut arbitration statutes. The Lathouris Parties claim that the parties did indeed engage in arbitration and the pertinent provisions of the statute therefore do apply.
The court believes that the term "alternative dispute resolution" is a generic term encompassing a variety of concepts, including but not limited to mediation and arbitration. In this case, the parties agreed in writing to submit their dispute to mediation, and if unsuccessful, to an adversarial proceeding before a neutral person.[1] Upon such stipulation, this court, Karazin, J., pursuant to P.B. § 23-67 referred these civil actions to ADR. The court concludes that the adversarial proceeding which eventually followed, before a neutral party, consisting of the offering of testimony, evidence, oral arguments and briefs, constitutes what is commonly known as an arbitration. To say that a proceeding is not an arbitration because it is not specifically referred to as such by the parties, the proposition espoused by the Handrinos Parties, does not in my view change its nature. To hold that an arbitration-type proceeding undertaking after referral under P.B. § 23-67 is not to be subject to the same requirements of the arbitration statutes and the same principles of law as any arbitration proceeding, would be to invite confusion and uncertainty. Furthermore, in various pertinent documents can be found references by both parties to the word "arbitration". Hereinafter, the court will refer to the adversarial proceeding conducted by the parties as arbitration, and will apply the statutory provisions of Chapter 909 to it. CT Page 4509
The Lathouris Parties raise the issue of whether or not an oath was administered to the arbitrator as required by C.G.S. § 52-414[2] They claim that Dr. Schramm was not sworn in on the record prior to the start of evidence in the case, that the oath was not waived in writing by the parties, and therefore the arbitrator had no authority to act and that the award must be vacated. Reinke v. Greenwich Hospital Assn., 175 Conn. 24,392 A.2d 966 (1978). It is true that the arbitrator did not take an oath on the record. However, he does state on the record, prior to the commencing of any evidence, that he was sworn. Also, in a post-hearing letter to all counsel dated October 13, 1998 he confirms that he was sworn prior to commencement of the arbitration. Nevertheless, in view of the uncertainty that counsel for the Lathouris Parties believed was created, the court held an evidentiary hearing on March 1, 1999 at which hearing Dr. Schramm appeared and testified. He stated that he indeed had taken the oath of his office as arbitrator, that it had been administered by Attorney Charles P. Mullaney, and he had done so prior to any evidence or argument. He further testified that the oath taken was substantially in the form required by statute. Without knowing the precise form of the oath taken, it is sufficient to note that an irregularity, if there be one in this case, in the swearing-in process is not a ground upon which an arbitration award may be vacated. Vincent Builders v. AmericanApplication Systems, 16 Conn. App. 486, 491-492, 547 A.2d 1381
(1988). The court finds that there is no evidence in this case upon which it could conclude that a proper oath was not administered under C.G.S. § 52-414(d).
In addition to their claim that the arbitration award must be vacated because of the lack of a valid arbitrator's oath, the Lathouris Parties present six other bases for vacating the award. These parties claim that the award 1) is in "manifest disregard of the law" in violation of C.G.S. § 52-418(a)(4); 2)
violates C.G.S. § 52-418(a)(4) in that the arbitrator exceeded his powers or so imperfectly executed them that a mutual, final and definite award on the subject matter submitted was not made; 3) Violates C.G.S. § 52-418(a)(3) in that there was misconduct on the part of the arbitrator thereby prejudicing the rights of the Lathouris Parties; 4) violates the public policy of the State of Connecticut; 5) Violates C.G.S. §52-408 which requires for arbitration agreements to be in writing; and 6) fails to conform to the submission.
The Lathouris Parties argue first that the award is in CT Page 4510 manifest disregard of the law. Basically, they claim that the arbitrator based his decision only on equitable principles and disregarded the law.
The submissions of the parties were unrestricted and therefore the court is limited to determining whether the award conformed to the submissions. Bridgeport v. Connecticut PoliceDepartment Local 1159, 31 Conn. App. 289, 628 A.2d 1336, cert. denied, 227 Conn. 925, 632 A.2d 703 (1993). The parties ". . . invocation of the doctrine of manifest disregard of the law, may, however, be encompassed by the existing statutory scheme for judicial review of arbitration in 52-418. Section 52-418(a)(4) provides that an award shall be vacated if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made." (Internal quotation marks omitted)Garrity v. McCaskey, 223 Conn. 1, 7, 612 A.2d 742 (1992). It also has been recognized that ". . . an arbitrator's egregious misperformance of duty may warrant rejection of the resulting award." Id., 7, 8. The Supreme Court has also acknowledged ". . . that a court should vacate an award if the memorandum blatantly discloses an infidelity to the obligation imposed upon the arbitrators." Id., Thus, "an award that manifests an egregious or blatantly irrational application of the law is an award that should be set aside pursuant to 52-418(a)(4), because the arbitrator has exceeded [his] powers or so imperfectly executed them that a mutual, final and definite award . . . was not made. We emphasize, however, that the manifest disregard of the law ground for vacating an arbitration award is narrow and should be reserved for circumstances of an arbitrators extraordinary lack of fidelity to established legal principles." (Internal quotation marks omitted) Id.
A careful reading of the arbitrators memorandum of decision reveals that he did not ignore legal principles and that the award does not reflect ". . . an egregious or blatantly irrational rejection of clearly controlling legal principles."Garrity v. McCaskey, supra, 223 Conn. 11. He advises us that "[p]ure legal or mathematical analysis does not yield the appropriate answer to the complex interrelationships here presented. Only equity provides an answer." The Lathouris Parties' conclusion that this statement demonstrates that the arbitrator decided to ignore legal principles is unwarranted. It indicates only that he felt compelled to apply an equitable as well as a legal analysis to the case, which the court finds he had a CT Page 4511 perfect right, if not obligation, to do. A reading of the arbitrators entire memorandum reveals that he nowhere manifests an egregious or blatantly irrational application of the law.
The Lathouris Parties next state that the award was not mutual, final and definite as required by C.G.S. §52-418(a)(4). They proceed to cite a host of claimed ambiguities and inconsistencies in the decision, making it, they believe, impossible to determine the true meaning of the award. The court will not review each such claim, but finds that with a fair reading of the memorandum, reasonable people will encounter little difficulty in understanding the findings and orders of the arbitrator. Of course, in reaching for loopholes in language, one can always make a case for ambiguity; however, with a reasonable reading of the various findings and orders in light of the issues to which they are addressed, and regarding each in the light of all the others, the court was able with little difficulty to understand the meaning and intent of the various orders and finds that the parties, with reasonable interpretation, can do likewise. The arbitrator in this case has not exceeded his powers or so imperfectly executed them that a mutual, final and definite award on the subject matter submitted was not made. See C.G.S. § 52-418(a)(4).
The next claim of those seeking to vacate the award is that there was misconduct on the part of the arbitrator in violation of C.G.S. § 52-418(a)(3). Specifically, the arbitrator called Attorney Wallman (counsel for the Lathouris Parties) and told him that he had finished his decision and expressed concerned about the payment of the balance of his fees by the Lathouris Parties. Days later, and after receipt of the arbitrator's decision, Attorney Robert Slavitt (counsel for the Handrinos Parties) called the arbitrator to thank him for his decision. The balance of that conversation seemed to consist of small talk.
"An arbitrator's participation in ex parte communication with a party or witness, without the knowledge or consent of the other party, may constitute misconduct on the part of the arbitrator sufficient to warrant vacation of the arbitration award." VincentBuilders v. American Application Systems, 16 Conn. App. 486, 496,547 A.2d 1381 (1988). However, it is clear that the ex parte
communication must involve facts, issues or evidence relevant to the subject of the arbitration proceedings. Id. The communication with Attorney Wallman occurred after the arbitrator had finished his decision. Moreover, the subject matter of the call was his CT Page 4512 concern with the payment of his fees. This did not involve facts, issues or evidence relevant to the subject of the arbitration proceedings. Although it could be argued that the issue of allocation of fees and expenses among the parties to an arbitration is relevant to the subject matter of the arbitration, the concern of an arbitrator about being paid by a party is not. The arbitrator had already finished his decision, in which orders relative to costs and fees had been made, before ever expressing his concern over payment. Therefore, the ex parte communication cannot be considered improper so as to invalidate the award.
Likewise, the communication of Attorney Slavitt with the arbitrator was not improper. The conversation took place after the decision had been issued and received, was inconsequential, and did not work to the prejudice of the Lathouris Parties. C.G.S. § 52-418(a)(3).
Another claimed act of misconduct is advanced and arises out of this sentence in the arbitration decision: "Further investigation into the facts surrounding this matter reveals that Peter acted as attorney until the very conclusion of the transfer." Apparently, the charge is that Dr. Schramm went outside the record and developed new facts on his own. This is completely without merit, and there is no evidence to support it. It is clear from the sentence in question and from the context of the paragraph in which appears, that the arbitrators meaning is that a further review of the evidence before him revealed relevant facts. No improper conduct can be attributed to the arbitrator.
The court has reviewed the claim of the Lathouris Parties that the arbitrators award violates public policy. The court will not, of course, review the facts presented to the arbitrator at the hearings, but having carefully examined the memorandum of decision, discerns no clear violation of strong public policy. See Garrity v. McCaskey, supra, 223 Conn. 7.
The Lathouris Parties' next claim that the arbitration agreement was not in writing. They concede, however, that the original agreement was in writing as were several 90-day extension agreements. However, they claim the last such extension, signed by the parties, was signed by the court, Karazin, J., without a clear designation as to whether he was granting or denying approval of the extension. The parties themselves apparently had no question as to Judge Karazin's CT Page 4513 intent, however, since they did nothing to clarify it until more than three months later, after the decision was rendered. Their right to raise this issue has been waived.
Finally the Lathouris Parties claim that the award must be vacated because it fails to conform to the submission. Because every reasonable presumption is made in favor of upholding an arbitrator's award, the party challenging the award as exceeding the limits stated in the submission, carries the burden of proving such non-conformity. Wolf v. Gould, 10 Conn. App. 292,297, 522 A.2d 1240 (1987); New Haven v. A.F.S.C.M.E., Council 15,Local 530, 9 Conn. App. 396, 398, 519 A.2d 93 (1986). The same burden of proof must hold when a party claims, as here, that the submissions were not fully addressed. In this case, the court finds that the award conforms to the submissions.
"Arbitration is favored by courts as a means of settling differences and expediting the resolution of disputes. There is no question that arbitration awards are generally upheld and that we give great deference to an arbitrator's decision. . . [t]he limited scope of judicial review of awards is clearly the law in Connecticut." (Citations omitted; internal quotation marks omitted) Wolf v. Gould, supra, 10 Conn. App. 296. "Every reasonable presumption and intendment will be made in favor of the award and of the arbitrators acts and proceedings. Hence, the burden rests on the party attacking the award to produce evidence sufficient to invalidate or avoid it." Gary Excavating Company v.North Haven, 160 Conn. 411, 413, 279 A.2d 543 (1971). The "attacking parties" here have failed to produce evidence sufficient to invalidate the award.
The decision of the arbitrator is confirmed and judgment may enter upon the award. The Handrinos Parties request for partial acceptance of the decision and for re-referral is denied. The Lathouris Parties motions to vacate the award are denied.
So Ordered.
D'ANDREA, J.