[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTIONS TO VACATE AND TO CONFIRM ARBITRATION AWARD
This matter began as an action entitled Robert M. Cheverie v. Ashcraft Gerel, Docket #CV-97-0479434-S with a return of April 1, 1997. The plaintiff claimed a breach of contract, breach of oral contract, unjust enrichment and negligent misrepresentation. The defendant maintained that there was no written agreement that is applicable to the case; there was no oral agreement between the parties; if there were an enforceable oral agreement, it has been breached by the plaintiff. That case was pending in the Judicial District of New Britain, when that matter was withdrawn and on June 11, 1997, the plaintiff filed a Demand for Arbitration (Demand). The matter presently before this Court relates CT Page 5515 to the arbitration and award that occurred pursuant to that Demand. Plaintiff moved to confirm the award and defendant moved to vacate.
Pursuant to the Demand, the arbitration hearings were held on September 1 and 2, 1999, before Arbitrator Alan I. Scheer. On October 29, 1999, the arbitrator rendered his award.
 FACTS
The plaintiff is an attorney admitted in this state. The defendant is a law firm that has offices in the Washington, D.C. area and Massachusetts.
Plaintiff served five years with the National Labor Relations Board (NLRB). After that, defendant hired plaintiff in 1985 to open an office in Hartford. During his term with the NLRB plaintiff had developed personal relationships with some union business agents and managers. Part of defendants' reason for hiring plaintiff was that it was expected he would bring in business relating to asbestos claims, particularly from union members. While with defendant, plaintiff worked to bring asbestos claim cases to defendant and he brought in such cases.
In 1987 plaintiff was dissatisfied with his compensation and he met with Martin Gerel, a senior partner of defendants' firm (Gerel). As a result on or about July 16, 1987, the parties entered into an Agreement which reads as follows:
Agreement
 It is agreed between Robert Cheverie and Ashcraft and Gerel (hereinafter the Firm) that in consideration of the efforts of Mr. Cheverie on behalf of the Firm, and his continued employment with the Firm, the Firm will pay him on a quarterly basis, a commission on all asbestos cases originating in Connecticut, settled or adjudicated, equal to 10% of the gross fees generated; and in any year in which the gross fees generated during that year exceed $500, 000.00, the commission for the amount in excess thereof shall be 12½% of the gross fees generated.
The Firm honored the Agreement at least until December 30, 1991 when it closed its Hartford office. At that time, none of the asbestos cases which plaintiff had originated were settled. It was anticipated that final settlement of some of those cases would take at least two or three CT Page 5516 years and that any fees that were then due would be received after final settlement and receipt of fees by defendant.
Plaintiff alleged two contracts in his complaint; first that there was a July 16, 1987 fees agreement between him and defendant and second, an agreement of September 15, 1987. It became clear in the arbitration that there were in fact at least two more contracts claimed. One that is undated but was executed between September 15, 1997 and the date when he became an "unequity partner" and one oral agreement in regard to being local or co-counsel. There may have been another in regard to plaintiff's pay on an hourly basis. Until the closing of the Hartford office plaintiff received a base salary.
The July 16, 1987 agreement reads, in pertinent part, that he will be paid "a commission of all asbestos cases originating in Connecticut" ". . . in consideration of the efforts of Mr. Cheverie on behalf of the Firm, and his continued employment with the Firm . . .". The plaintiff testified that he would be paid the 10% "commission" on all cases that the originated in the Hartford office "for as long as there was a Hartford office".
Plaintiff told the arbitrator that he believed the phrase "and his continued employment with the Firm" referred to those cases he brought into the Firm during his employment, it is quite clear that that phrase relates to part of the consideration for his employment, i.e., that he will keep working. But the parties actions and testimony make it even clearer that he was to receive the 10% commission on those cases that he had brought in before the closing whenever they settled.
The defendant, through a partner named Ralston, came to the Hartford office in regard to its closing to make individual agreements with the four attorneys in that office as to its closing. At that time plaintiff agreed to act as local counsel.
The Firm asserted that the oral agreement at the time of the office closing was the only contract left between the parties and the earlier written agreement did not continue.
Plaintiff opened his own law firm January 1, 1992.
After the Hartford office closed, plaintiff was involved as local counsel on behalf of the defendant until near the end of 1993.
Although plaintiff testified that at the time of the closing of the Hartford office, "there was no change in my agreement." This is simply a misstatement for it is clear under the new arrangements he was to CT Page 5517 receive a salary. However, his fee agreement was still in effect.
In December 1992 plaintiff entered into a co-counsel agreement with the law firm of Ferraro and Associates. Under that agreement plaintiff would receive one-third of the fees in any matter that he referred to Ferraro on which Ferraro received fees. Plaintiff told defendant of this arrangement sometime in the earlier part of 1994. In later 1994 plaintiff telephoned to partners at defendant as to his fees because he had some notices of settlements in regard to asbestos cases he had obtained for defendant prior to December 31, 1991. He was assured he would be paid. The total fees received by defendant on those cases was $1,077,000 and 10% of that is $107,700.
At the time of the arbitration hearing not all the cases here involved had been settled.
His award, properly, does not give us any reasons for the award or any of the facts supporting those reasons. But his award does have a paragraph that awards "$120,023.56 for [plaintiff's] share of fees earned by [defendant] through August 31, 1999 together with interest at the rate of ten percent (10%) per annum through the date of this Award." The court interprets this to mean interest is due on the award plus interest on that sum from August 31, 1999 through the Award date of October 29, 1999, simply because no other beginning date or dates are found by the arbitrator.
The basic question is, if an attorney is employed by one law firm to almost exclusively assist and contribute as an attorney in one narrow area of practice can he, at the same time, be local counsel and co-counsel for an entirely separate law firm to assist it and contribute to it in the same narrow area.
If there were a submission it arose out of the following dialogue among the two parties and the arbitrator:
"ARBITRATOR SCHEER: All right. You may begin, Counsel.
 MR. GARRISON: We had not discussed whether there would be any specific submission to you, Mr. Scheer. And, as far as I'm concerned, this case can go in, in an unrestricted submission. Do we have an agreement on that?
MR. SWEENEY: Yeah.
MR. GARRISON: All right.
CT Page 5518 MR. SWEENEY: No. Let me — the issue — no; let me withdraw that agreement. I think the issues that are before this Board, are what Mr. Cheverie is entitled to, as a result of the closure of the Hartford office of Ashcraft and Gerel, as a result of an agreement reached as part of his termination.
 I don't think that we're going to get beyond what he's entitled to for compensation, that arises out of anything other than termination of the office.
 ARBITRATOR SCHEER: Am I correct in understanding, Mr. Garrison, that by unrestricted you mean that there is no restriction on the Arbitrator's ability and power to decide that question, or the question that is before us?
MR. GARRISON: Right.
 ARBITRATOR SCHEER: And as neither of you have actually set forth a submission, I will form the submission from the complaint and the answering statements?
 MR. GARRISON: Right. That's agreeable to me. I think we see the issues in the same manner; generally speaking, was there a valid agreement. If so, was it breached by Ashcraft and Gerel. if so, what should the remedy be. And if there was no valid agreement should Mr. Cheverie have a recovering [sic] quantum meriut.
 MR. SWEENEY: And the only thing I would add to that, is whether or not Mr. Cheverie has reached [sic] that agreement.
 MR. GARRISON: I think that I would respectfully disagree with that. And if that comes up, I would object. And the basis of the objection would be that has been stricken on —
MR. SWEENEY: No, it has not.
MR. GARRISON: All right. Well, we'll have to —
 ARBITRATOR SCHEER: I think we will leave it as an open issue; one of the things to be decided. CT Page 5519
 MR. GARRISON: All right. Well, then let's put Mr. Cheverie on."
 LAW
Arbitration is a creature of contract and the parties themselves ordinarily determine the issue to be decided and define the scope of the arbitrator's power. North Haven Assn. of Educational Support Staff v.Board of Education, 209 Conn. 280, 283.
The parties did not contest that the matter is arbitrable.
There was no submission made in the above dialogue because neither the parties nor the arbitrator stated at the hearings what the submission was. The arbitrator never stated what it was in his Award, except to say he was designated as arbitrator in accordance with the September 15, 1987 agreement.
The submission to the arbitrator was not specific and both parties agreed that the arbitrator was to decide whether there was a valid agreement between the parties, if it had been breached by defendant and if so what shall the remedy be. In addition, he was to decide if plaintiff breached that agreement.
Under Conn. Gen. Stat. § 52-408 an agreement to arbitrate must be in writing. We had that here in the September 15, 1987 Agreement. The statute does not require the submission to be in writing although the court in Bennett v. Meader, 208 Conn. 352, 363-364 suggests it would be helpful in clarifying the rights of the parties.
 I. STANDARD OF REVIEW
This was a voluntary contractual arbitration and was unrestricted. Thus this court's review is as to whether the award conformed to the submission. Bridgeport v. Connecticut Police Department Local 59,32 Conn. App. 289, cert. denied 227 Conn. 925.
 II. REFUSAL TO HEAR EVIDENCE
There was evidence offered which was an attack on plaintiff's credibility. Defendant also alleged that it "goes to the issue of the controversy of whether or not [sic] Mr. Cheverie breached the contract". Courts try not to succumb to examining such rulings. Vincent Builders v.American Application Systems, 16 Conn. App. 486, 493. When they do a court must find that because of the evidentiary ruling the party was in CT Page 5520 fact deprived of a full and fair hearing before the arbitrator. Id. 493. That cannot be found here.
 III. INTEREST
Plaintiff's claim for interest is "under a contract for fees". The parties seem not to agree that the claim is for a liquidated amount and the arbitrator made no finding in that regard.
Under Conn. Gen. Stat. § 37-3a the allowance of prejudgment interest depends on whether the detention of the money is wrongful under all the circumstances. Associated Catalog Merchandisers, Inc. v. Chagnon,210 Conn. 734, 748. This is a fact bound determination left to the trier's discretion Id. 749. The court can see no abuse of such discretion by the arbitrator.
 IV. PUBLIC POLICY
Generally an arbitrator's award under an unrestricted submission may only be vacated on three grounds. Steiner v. Middlesex Mutual AssuranceCompany, 44 Conn. App. 415, 425. The only pertinent ground here is if the award violates public policy. The public policy exception to arbitral authority should be narrowly construed and a court's refusal to enforce an award because of that exception must be based on a finding that the enforcement of the award "would violate some explicit public policy that is well defined and dominant, and is to be ascertained by reference to the laws and legal precedents." Watertown Police UnionLocal 541 v. Watertown, 210 Conn. 333. Defendants have not sustained their burden of proof in this regard.
In addition, they have not sustained their burden to prove their claim that the arbitrator exceeded his powers or imperfectly executed them.
A. Rules of Conduct §§ 1.5, 1-7, 1-8 and 7-3
Rule § 1.5 deals with attorney's fees. The relevant part is subsection (e) and has to do with division of fees between lawyers. The court cannot see a violation of public policy based on Rule § 1.5 in our situation.
Rule 1-7 deals with a conflict of interest which may arise where an attorney has two or more clients and his representation of at least one of them "will be directly adverse to another client". We see no facts here of a possible adverse result for any one of the clients here by virtue of plaintiff representing another. CT Page 5521
Rule 1-8 prohibits an attorney from engaging in various kinds of transactions which will or might adversely affect one or more of his clients. Subsections (a) through (e) and (g) through (h). None of those are relevant. The possibly relevant subsection is (f) which deals with receipt of compensation from one other than his client. We have no proof of that here.
Rule 7-3 is basically about the limits on solicitation of legal business from non-clients with the hope that they will become clients. Subsection (a)(3) allows certain contacts if they are made "[u]nder the auspices of a bona fide . . . trade organization." The evidence before the court, although not complete, is such that the arbitrator could conclude that plaintiff's actions were "[u]nder the auspices of a bona fide "trade organization".
Subsection (b)(4) prohibits an attorney from contacting a prospective client in regard to legal work if, "the written communication concerns a specific matter and the lawyer knows or reasonably should know that the person to whom the communication is directed is represented by a lawyer in the matter." Thus our question is whether the relationship of plaintiff, defendants and some clients must lead a reasonable person to find that plaintiff had violated the restrictions of that subsection. Under the evidence before the court we cannot so hold.
There is an issue of whom plaintiff represented. Both he and defendant say he "represented various unions". On the other hand there is no evidence that any union was a client in the asbestos cases. It was the individuals that plaintiff secured as clients for defendant in those cases. One cannot tell from the "submission" or the award if the arbitrator recognized that as an issue in his decision.
The court comes to no conclusions as to any future conduct of the arbitrator in this matter.
Arbitration is favored by the courts and the party challenging the award has the burden to prove how the award violates the Conn. Gen. Stat. § 52-418. He has not sustained that burden.
The motion to confirm is granted and thus the motion to vacate is denied.
O'Neill, J.